**In re JUDICIAL CAMPAIGN COMPLAINT AGAINST CARR.**

Commission of Judges
Appointed by the
Supreme Court of Ohio.

No. 95–2194.

Decided Nov. 28, 1995.

*Brunner & Brunner* and *Jennifer L. Brunner,* for complainant Raymond Pianka.

*Armstrong, Mitchell & Damiani, Louis C. Damiani* and *Bruce A. Zaccagnini,* for respondent Cathleen Carr.

---

ORDER OF THE COMMISSION OF JUDGES.

This matter involves a review by a commission of five judges of a panel determination that the respondent violated two provisions of Canon 7 of the Ohio Code of Judicial Conduct. The commission members are as follows: Judges James W. Kirsch, George J. Demis, William G. Lauber, Mark K. Wiest, and James A. Brogan, Chair.

On October 10, 1995, the complainant, Raymond Pianka, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court contending that the respondent, Cathleen Carr, had knowingly misrepresented

Pianka's judicial qualifications in violation of Canon 7(B)(2)(f) of the Code of Judicial Conduct and had personally solicited financial contributions in violation of Canon 7(C)(2)(a). The Secretary of the Board reviewed the complaint and a formal complaint was filed on October 16, 1995. The respondent states that on October 18, 1995, she was notified of the formal complaint and of the panel hearing date, which was set for October 23, 1995 in Columbus.

On October 20, 1995, the respondent requested a continuance of the panel hearing from October 23 until November 2. The panel Chair denied the request, noting that the proceedings are designed to be expedited and that the complaint set forth specific, straightforward facts which did not require substantial preparation for response.

On the date of the hearing respondent's counsel renewed the continuance motion and pointed out that the respondent and his co-counsel had scheduling conflicts and could not attend the hearing. The motion to continue the hearing was again denied.

Raymond Pianka and the respondent were candidates for Judge of the Cleveland Municipal Court, Housing Division, in the November 1995 election. Pianka testified that he had practiced law in Cleveland for some seventeen years and he concentrated on real estate development law and probate. He said he had been a Cleveland City Councilman for nine and one-half years.

Pianka testified that Judge Judith Kilbane Koch of the Cuyahoga County Common Pleas Court gave him a letter addressed to her from the "Friends of Cathleen Carr." The letter was sent to Judge Koch on June 4, 1995. The writer was seeking financial support for respondent's judicial campaign. At the bottom of the letter in a different color ink was the handwritten statement, "We need your help, now! [signed] Cathleen." A similar letter was addressed to the judge's bailiff.

Pianka also presented a letter on "Friends of Cathleen Carr" stationery sent to members of the Executive Committee of the Democratic Party on September 10, 1995 seeking the Party endorsement. The letter stated, *inter alia*, that "[m]y opponent has never handled a single case in housing court as an attorney." The letter was signed by someone purporting to be Cathleen Carr. The signature resembles the one on the letter to Judge Koch and her bailiff.

Pianka testified that Carr's statement to the Executive Committee was false. He provided evidence that he had filed three forcible entry and detainer cases in housing court on behalf of Emery Marcus, one in 1992, one in 1993, and one in 1994. He stated that he had filed other cases in the housing court on other occasions, but he was not more specific.

Pianka admitted on cross-examination that he was unaware of any index at the housing court of the attorneys who file the cases. He admitted that some ten thousand cases are filed in housing court annually. In his statement of judicial qualifications required by Canon 7(B)(6), Pianka stated that he had "filed evictions before various Municipal Courts." Respondent apparently never asked Pianka if he had ever filed any cases in housing court.

The panel determined that the complainant had demonstrated that the respondent had violated both canons as alleged in the complaint. The panel recommended that a cease and desist order be issued and that the respondent be fined $1,000. The panel also recommended that the Ohio Supreme Court consider this matter on an expedited basis.

The panel's report was filed on October 27, 1995. Counsel for respondent state that they received notice of the report on October 30, 1995. Also on October 30, the Supreme Court appointed a five-judge commission to review the panel's report pursuant to Gov.Jud.R. II(5)(E)(1), see 74 Ohio St.3d 1441, 656 N.E.2d 342, and the parties were given until 1:30 p.m. on November 1, 1995 to file written briefs to be considered by the commission.

The five-judge commission was immediately provided copies of the transcript of the hearing and the panel's report. On November 1, 1995, the respondent filed her brief and objections to the panel report. She contended that the expedited procedures of Gov.Jud.R. II(5) and the denial of her motion for a continuance deprived her of due process of law. She also contended that the complainant failed to demonstrate the alleged violations by clear and convincing evidence. The respondent also contended that her failure to receive a transcript of the proceedings denied her due process.

The commission finds that the respondent has raised three issues for consideration in review of the hearing panel's finding against her. They are as follows:

(1) Did the panel deny respondent due process of law by refusing her request for a continuance of the hearing?

(2) Did the panel abuse its discretion by finding by clear and convincing evidence that respondent violated Canon 7(B)(2)(f) of the Code of Judicial Conduct by knowingly misrepresenting her opponent's qualifications or other fact concerning the opponent?

(3) Did the panel abuse its discretion by finding by clear and convincing evidence that respondent violated Canon 7(C)(2)(a) by personally soliciting campaign funds?

Further, the commission will consider whether the panel abused its discretion with respect to the punitive sanction imposed against respondent.

■ The first issue raised is the alleged lack of due process afforded respondent with regard to the hearing conducted. As with all issues raised, this is a case of first impression under the Rules for the Government of the Judiciary of Ohio, effective as amended September 1, 1995 ("Rules") and Code of Judicial Conduct, as amended effective July 1, 1995 ("Code"), as they pertain to judicial conduct in elections.

Gov.Jud.R. II(5) sets forth the procedure for bringing, conducting and disposing of a grievance filed after September 1, 1995 that alleges a violation by a judicial candidate during the course of a campaign. It details the procedure and time frame for its handling so as to minimize the effect a particular violation may have on the electoral outcome. The time limits imposed by the section for determining probable cause of a violation of the Code, appointing a hearing panel and conducting a formal hearing on the merits of the allegation are short. However, by necessity, they must be so. The Rules were adopted to prevent judicial candidates from committing violations in the belief that any punitive action would come well after the election. Previously, the risk associated with a breach of the Code was not enough to deter the potential benefit that could be gained from the violation.

■ That the respondent can receive a range of sanctions which amount to a loss of property interest is without dispute. See Gov.Jud.R. II(5)(E) and (G). Likewise indisputable is the fact that the appointment of the hearing panel and the commission constituted state action. Therefore, the respondent is entitled to procedural due process, consisting of notice and meaningful opportunity to be heard. *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 177, 624 N.E.2d 1043, 1045, citing *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. As stated in *Williams v. Dollison* (1980), 62 Ohio St.2d 297, 299, 16 O.O.3d 350, 351, 405 N.E.2d 714, 716:

■ "Due process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal which pronounces judgment upon a question of life, liberty or property, to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, such is not due process of law."

The question presented is whether the hearing panel's denial of respondent's motion for a continuance amounted to such an abuse of discretion so as to constitute a denial of her right to procedural due process.

■ Under the procedure established by the Rules, the hearing must be held within five days of the appointment of the hearing panel. Gov.Jud.R. II(5)(D). While the commission acknowledges that the speed with which the hearing is held puts the parties to the task of quickly assembling their evidence, we do not feel such a burden violates due process. It cannot be forgotten that these alleged violations take place in a limited period of time prior to an election. The concept of due process is a flexible one which varies depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur. *Walters v. Natl. Assn. of Radiation Survivors* (1985), 473 U.S. 305, 320, 105 S.Ct. 3180, 3188, 87 L.Ed.2d 220, 230.

■ The commission finds that the hearing panel acts as a trial court would in any civil or criminal proceeding. It takes evidence and makes findings of fact, applies the law to those facts and makes a decision. Therefore, it is reasonable to conclude that it may grant or deny a continuance in the matter based on its sound discretion. *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, held that such a ruling shall not be disturbed unless there has been a clear abuse of discretion. In *State v. Sowders* (1983), 4 Ohio St.3d 143, 144, 4 OBR 386, 388, 447 N.E.2d 118, 120, fn. 2, the Ohio Supreme Court held that judicial discretion is " 'the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case.' " *Id.*, quoting *Krupp v. Poor* (1970), 24 Ohio St.2d 123, 53 O.O.2d 320, 265 N.E.2d 268, paragraph two of the syllabus.

In the case at bar, the respondent sought a continuance of the hearing on the grounds of lack of time to adequately prepare her defense. However, the hearing panel determined that the factual issues to be decided were very narrow and that a substantial degree of review or preparation was not necessary to address them. Also, it was noted that the very nature of the proceedings required that they be conducted in an expedited manner and, as such, the usual discovery and trial preparation were not available under the circumstances. Based on the nature of the proceeding and the time frame which was dictated by the Rules, the commission cannot say that the hearing panel abused its discretion by denying respondent's request for a continuance. Certainly, the denial of the continuance did not rise to the level of denial of procedural due process.

The second issue presented is whether it was shown by clear and convincing evidence that respondent knowingly misrepresented her opponent's qualifications or other fact concerning the opponent. The evidence presented to the hearing panel established by the required standard that respondent made the statement that her opponent "has never handled a single case in housing court as an

attorney." The statement was made by her personally in a letter to the Executive Committee of the Cuyahoga County Democratic Party seeking its endorsement. The evidence, also, clearly and convincingly established that the statement was not accurate.

 Preliminarily, we must determine whether it must be shown by clear and convincing evidence that the judicial candidate had actual knowledge that the statement made against an opponent misrepresented that opponent's qualification or other fact before a violation of Canon 7(B)(2)(f) of the Code has occurred.

Canon 7(B) states that "[a] judge or judicial candidate shall not do any of the following:

" * * * *

"(f) knowingly misrepresent his or her identity, qualifications, present position, or other fact or the identity, qualifications, present position, or other fact of any opponent[.]"

The commission finds that to hold judicial candidates against whom false accusations have been made to the burden of proving actual knowledge by the opponent of the falsity of the statement would defeat the purpose of the Canon and the Rule. Yet, the commission is unwilling to impose a strict liability standard on judicial candidates that would hold liable any candidate who makes any representation against an opponent which may later prove to be untrue.

 Therefore, the commission must consider the definition to be used for the word "knowingly." The Canon does not provide a definition. Therefore, the commission adopts the definition as found in R.C. 2901.22(B):

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Under that definition, did the hearing panel err in finding that respondent knowingly misrepresented her opponent's qualifications or other fact concerning her opponent? If she acted knowingly, the hearing panel was correct. If she did not act "knowingly" but was merely "reckless" in her statement, then she did not violate the Canon, however false her statement later proved to be. The commission would adopt the standard of comparison stated in *State v. Edwards* (1992), 83 Ohio App.3d 357, 361, 614 N.E.2d 1123, 1125: "If the result is probable, the person acts 'knowingly'; if it is not probable but only possible, the person acts 'recklessly' * * *."

 In the case at bar, respondent claimed that her opponent had never appeared in the Cleveland Municipal Court, Housing Division, as an attorney.

This was the bench to which both aspired and the statement was contrasted with her own experience which, she claimed, made her more qualified to receive the Democratic Party's endorsement of her candidacy. It was made in absolute terms and emphasized by the bold-face lettering.

The question, however, is whether respondent knew that the statement was probably false. The reader of that letter is clearly meant to believe that respondent knew something about her opponent, namely, that he had *never* appeared as an attorney in the division of the court whose bench he sought. By the very nature of the terms used, the respondent stated that she had knowledge of the statement's accuracy. She did not equivocate.

Given complainant's statement of qualification filed according to law, respondent must be charged with knowing her opponent had appeared as an attorney in various municipal courts on eviction matters. Within the city of Cleveland, the only court which handled eviction actions is the Cleveland Municipal Court, Housing Division. See R.C. 1901.181(A).

From the direct examination of complainant it was conclusively proved that respondent's statement of her opponent's appearance as an attorney in that court was false. On cross-examination it was established clearly that such a misstatement could have been avoided by a search of the records themselves or by simply asking complainant about that fact, neither of which respondent did. Therefore, the hearing panel did not abuse its discretion in charging respondent with the knowledge that her statement of September 10, 1995 was probably false by clear and convincing evidence. Hence, she made the misstatement "knowingly" under the definition established.

The commission also finds that the complainant proved by clear and convincing evidence that the respondent personally solicited campaign funds in violation of Canon 7(C)(2), which provides that "[a] judicial candidate personally shall not solicit or receive campaign funds. * * *" It seems highly improbable that anyone other than the respondent signed the letter to the Executive Committee of the Democratic Party. That signature clearly matches the one on the solicitation letter to Judge Koch and her bailiff.

Judge Demis and Judge Brogan dissent in part because they believe that respondent's conduct may have been reckless, but there was no evidence that she knew her statement that the respondent had never appeared as an attorney in Housing Court was false. The complainant's experience in housing court was modest at best. His judicial qualifications statement did not say he had experience as an attorney in "housing court." There was no index to verify respondent's belief. She should, however, at least have asked the complainant if he had ever appeared as an attorney in housing court.

Judges Demis and Brogan agree that the evidence established the respondent personally solicited the contribution from Judge Koch and her bailiff. Judges Brogan and Demis would recommend that the fine be reduced to $500 and costs of the proceedings.

■ Accordingly, the majority of the commission finds that the respondent committed the violations as alleged in the complaint. She is fined $1,000 and costs of all proceedings. No cease and desist order would serve any purpose at this late date.

*So ordered.*

WIEST, KIRSCH and LAUBER, JJ., concur.

BROGAN, Chair, and DEMIS, J., concur in part and dissent in part.

JAMES A. BROGAN, J., of the Second Appellate District; MARK A. WIEST, J., of the Wayne County Court of Common Pleas; JAMES W. KIRSCH, J., of the Scioto County Court of Common Pleas, Juvenile/Probate Division; GEORGE J. DEMIS, J., of the Tuscarawas County Court of Common Pleas, Juvenile/Probate Division; and WILLIAM G. LAUBER, J., of the Lima Municipal Court, sitting by appointment.