MYERS, Appellant,

v.

MOSCHELLA, Appellee.

[Cite as *Myers v. Moschella* (1996), 112 Ohio App.3d 75.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950731.

Decided June 26, 1996.

---

*Cathy Cook,* for appellant.

*Kenneth E. Peller,* for appellee.

---

*Per Curiam.*

This is an appeal brought from an action filed in juvenile court to determine child support. The plaintiff-appellant, Margaret Theresa Myers, asserts three assignments of error: (1) that the trial court erred by not ordering child support from the birth of each child; (2) that the trial court erred by refusing to order the children's father, Stephen Moschella, the defendant-appellee, to contribute to past medical expenses of the children; and (3) that the trial court erred by failing to order the defendant-appellee to pay medical expenses incurred by the plaintiff-appellant subsequent to the court's March 29, 1993 order regarding insurance coverage. For the reasons that follow, we find none of the assignments of error to be well taken and thus affirm the judgment of the trial court.

■ Under her first assignment of error, Myers argues that the trial court erred by not ordering support from the date of birth for both children. Both parties agree that the governing authority is this court's decision in *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 3 OBR 157, 444 N.E.2d 58. In *Baugh,* we held:

"While the awarding of a monetary amount for child support is a matter generally within the discretion of the trial court, this does not permit it to ignore the fact that, under R.C. 3111.17, the child is entitled to, and the father is obligated to provide, support from the date of birth. Where damages for support payments for the period from the date of the child's birth to the date of adjudication are prayed for and proved, as here, it is an abuse of discretion for the court to make no award of child support for that period *in the absence of an affirmative demonstration of some circumstance which ought reasonably to relieve the father of this obligation and the child of this entitlement.*" (Emphasis added.) *Id.* at 140–141, 3 OBR at 158–159, 444 N.E.2d at 61.

The question we must answer here is whether the qualifying language in *Baugh* is satisfied by the singular facts of this case. Both the plaintiff-appellant and the defendant-appellee are homosexuals. The appellant is a tenured university professor with an income substantially greater than that of the appellee, who is a credit analyst. In 1985, the appellant was in a long-term relationship with another lesbian, with whom she wanted to raise children. By agreement with her partner, the appellant asked the appellee if he would father the child. According to the appellant, the agreement was that she and her partner "would have full responsibility for the child" while allowing the child to develop "a social relationship with the biological father, if that was possible." In her testimony, the appellant made clear that by "full responsibility" she meant that she and her partner would have "financial responsibility" for the child, including medical and child-care expenses. At one point, she described as a *"quid pro quo "* the fact that the child was to live with her and her partner, and that the appellee was not to pay child support. She stated that the child "would have every opportunity to develop a relationship with the biological father," but that she and her partner would control that relationship. Elsewhere she described the agreement as "unequivocal, absolutely unequivocal."

Following the birth of the child, the appellant controlled visitation and took full financial responsibility for the child. In 1988, the parties agreed to conceive another child under "the arrangements as they then existed."

In October 1992, following a disagreement between the parties regarding visitation, the appellee filed an action in juvenile court for a determination that he was the father of the two children. At that point, according to the appellant, she "abrogated" the agreement between them. After March 1993, visitation was established by court order.

Asked specifically if it were not true that, but for the fact that the appellee sought court-ordered visitation, she would not have sought child support, the appellant answered:

"If [the defendant-appellee] had not come to court and sought from the Court a definition of his rights, I would not be in court seeking its definition of his responsibilities. You are absolutely correct."

The trial court found the "most compelling factor" in determining the commencement date for child support to be "the point of breakdown in the amicable and cooperative parenting arrangement between the parties," and awarded support only from that date forward. Both below and on appeal, the appellant argues that, notwithstanding the terms with which she induced the appellee to father her children—what she herself described as a *quid pro quo* absolute and unequivocal in its terms—she and the appellee could not *inter se* contract away her children's right to support.

As noted, this court recognized in *Baugh* that, although the general rule under R.C. 3111.17 is that the support obligation commences at birth, there may be circumstances "which ought reasonably to relieve the father of this obligation." Provided that such circumstances are affirmatively demonstrated in the record, the trial court's decision not to order child support to commence at birth is a matter reviewable under an abuse-of-discretion standard. Judicial discretion is "founded upon the reason and conscience of the judge" directed toward "a just result in the light of the particular circumstances of the case." *Krupp v. Poor* (1970), 24 Ohio St.2d 123, 53 O.O.2d 320, 265 N.E.2d 268, paragraph two of the syllabus. An abuse of discretion "is readily defined as more than error of law or judgment, but implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable." *Ruwe v. Bd. of Twp. Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

Given the particular circumstances of this case, we cannot say that the trial court abused its discretion in ordering the support order to commence as it did. The appellant's first assignment of error is overruled.

In her second assignment of error, the appellant asserts that the trial court erred by refusing to order the appellee to contribute to past medical expenses of the children, including both the cost of medical insurance and medical expenses not covered by insurance. We find the merits of this assignment of error subsumed by our resolution of the first.

In her third assignment of error, the appellant asserts that the trial court erred by failing to order the appellee to reimburse her for one-half of certain uninsured medical expenses for the children's psychological care. According to the appellant, reimbursement is required by the trial court's March 29, 1993,

"order regarding health insurance coverage." This order, however, only expressly provides for "medical, optical, hospital, dental, or prescription services" and is limited by its terms to deductible costs or copayments for insured expenses. There is no separate order of record for extraordinary medical expenses, including psychological expenses, as is required by R.C. 3113.215(B)(5). We find, therefore, no basis to validate the error which the appellant alleges.

Accordingly, the judgment below is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., GORMAN and PAINTER, JJ., concur.