[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellants, Christopher and Kelly Bancroft, appeal from a judgment of the Ashtabula County Court of Common Pleas granting a directed verdict in favor of appellees, Douglas E. and Traci A. Warren. For the reasons that follow, we affirm the judgment in part, reverse in part and remand for further proceedings consistent with this opinion.
The facts pertinent to this appeal are as follows. On August 10, 1994, appellants entered into an agreement to purchase appellees' home located at 6065 Green Road, North Kingsville, Ohio. There is no dispute that closing on the property occurred on November 10, 1994, with appellants to obtain possession of the home thirty days thereafter on December 10, 1994.
Prior to entering into the contract with appellees, appellants toured the home on two separate occasions. During these two inspections, the house appeared to be in good condition both inside and out. In the Residential Property Disclosure Form ("Disclosure Form") given to appellants, pursuant to R.C. 5302.30, appellees conveyed that they had no knowledge of any problems with the home other than a notation that the "septic [system] to be repaired before closing." In addition, appellants purchased the property with knowledge that there was an unfinished bathroom in the basement of the home which would be left incomplete by appellees.
On the date appellants were to move into their home, December 10, 1994, appellees failed to vacate the premises. While there is some question as to whether appellants gave appellees permission to stay in the home past this date, possibly until December 15, 1994, appellants began eviction proceedings against appellees on December 11, 1994. Appellees eventually vacated the premises on January 11, 1995. In the interim, appellants were forced to make alternative arrangements for housing.
Upon finally obtaining possession of the home, appellants noticed that appellees left the premises in disarray. Areas where appellees attached pictures and other items to the interior walls of the home were extracted in such a way as to cause small chunks of paint and dry wall to also be removed. Appellees left debris outside of the home and allegedly tore up the lawn.
Aside from the condition of the premises upon obtaining possession on January 11, 1995, appellants immediately began experiencing additional problems with the home. Contrary to appellees' representations in the Disclosure Form that they knew of no "problems with the roof," two skylights located in the roof leaked whenever it rained. In addition, appellants experienced problems with the bathroom in the basement of the home and later discovered that the initial plumbing to this bathroom was installed incorrectly. Moreover, appellants received no confirmation that the septic system was repaired by appellees.
On December 13, 1996, appellants filed suit against appellees.[1] Appellants alleged a variety of claims sounding in breach of contract and fraudulent misrepresentation. A jury trial on the matter commenced on December 17, 1997.
At trial, appellants testified as to the circumstances surrounding the purchase of the home from appellees and described above. Appellants claimed that they were entitled to damages for the following: rental cost and expenses for alternative housing from December 1, 1994 to January 11, 1995; attorney fees incurred in seeking appellees' eviction from the premises; additional moving expenses; and costs incurred to repair damage to the interior walls, lawn, skylights, downstairs bathroom, and septic system.
As evidence of the damages they sustained as a result of appellees' alleged misdeeds, appellants testified that they were forced to move in with one of their parents and incurred $1,200 in expenses for housing, storage of their pets and belongings, "food, water, [and] electricity." Appellants attempted to introduce into evidence the canceled check used to pay for these expenses, but the trial court excluded the check on the basis that "there hasn't been any evidence to indicate that $1,200 * * * is a reasonable rental expense to be incurred and whether something like that should ever be reasonably foreseeable by a person against whom a claim like this is brought." Appellants further testified that they spent approximately $140 in legal fees in their attempt to evict appellees from the premises,[2] $60 for additional moving expenses, and between $500 and $600 to repair the damage done to the interior walls. As to the repairs performed to the interior walls, appellants attempted to introduce an estimate from a contractor as to the nature and costs of the repairs. The trial court also excluded this estimate, upon a defense objection, on the basis that the document amounted to inadmissible hearsay.
The above represented the only evidence that appellants presented as to the amount of damages they sustained as a result of appellees' actions. Appellants made no attempt to present evidence, or suggest an alternative remedy, for any damages that they may have sustained, if any, to the lawn, skylights, or septic system. As to the downstairs bathroom, appellants presented expert testimony from a plumber who viewed the bathroom and described the nature of the repairs needed to be made to bring the lavatory up to code. Appellants also attempted to introduce a document that the plumber created, listing the work necessary to complete the bath, which the trial court excluded as cumulative evidence of the witnesses' testimony. However, once again, appellants failed to offer any evidence as to the extent of the damages and offered no reasonable explanation as to why they would expect a functional downstairs bathroom when they purchased the property with knowledge that the facilities were unfinished.
At the conclusion of appellants' case-in-chief, appellees moved for a directed verdict. The trial court granted appellees' motion stating as follows:
 "In the absence of evidence of active fraud or active nondisclosure, I don't think that any cause of action has been made out on that. In order to prevail, there must be, first of all, evidence showing grounds for [a] cause of action. Half of these things that have been brought up here I don't think there's any evidence showing a cause of action, but the most important thing is that you must also have proof of damages before a jury may be allowed to consider the case."
In making its determination, the trial court noted that appellants did present evidence as to the amount they paid in rent as well as the repairs they made to the interior wall of the home. The trial court dismissed appellants' testimony as to these issues, however, because there was no evidence in the record for the jury to determine the reasonableness of these expenses. The trial court made no specific reference to the evidence appellants presented in support of their claims for legal and additional moving expenses. From this judgment, appellants filed a timely notice of appeal and now assert the following six assignments of error:
 "1. The trial court erred in restricting appellants' counsel's voir dire.
 "2. The trial court erred in excluding from evidence appellants' estimate of damages.
 "3. The trial court erred in excluding from evidence appellants' check demonstrating damages in the form of extra rent.
 "4. The trial court erred in excluding from evidence appellants' expert witness statement.
 "5. The trial court erred in sustaining appellees' motion for a directed verdict.
 "6. The trial court erred in failing to grant appellants' request for a trial by jury."
In their brief to this court, appellants have argued that the trial court committed many abuses of its discretion, starting with the jury voir dire, that permeated throughout the trial in this case leading to the improper granting of a directed verdict in appellees' favor. As the trial court's granting of a directed verdict is appellants' principal concern, and is dispositive of this appeal, we will address appellants' fifth assignment of error first.
In the fifth assignment of error, appellants contend that the trial court erred in granting appellees' motion for a directed verdict. As to some of appellants' causes of action, we agree with appellants' arguments.
Civ.R. 50(A)(4) provides as follows:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
The Supreme Court of Ohio has explained the method that should be employed in deciding a motion for a directed verdict as follows:
 "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove." Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, 68-69.
In the present case, appellants alleged that appellees engaged in several acts of wrongdoing citing claims in breach of contract and fraudulent misrepresentation. However, in virtually all of their claims, appellants failed to offer evidence sufficient to survive a motion for a directed verdict.
Aside from the $1,200 they paid for alternative housing and storage, $140 in legal fees trying to evict appellees from the premises, $60 for additional moving expenses, and $500 to $600 to repair damage to the interior walls of the home, appellants presented no evidence to substantiate their claims for damages. In addition, as to appellants' claims of fraud, appellants presented no evidence of materiality or justifiable reliance upon any representations that appellees allegedly made as to the condition of the home. See Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42,49; Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169. Consequently, for the vast majority of appellants' claims, we cannot fault the trial court for granting appellees' motion for a directed verdict.
However, as to the claims that we have highlighted throughout this opinion, we can find no justification for the trial court's decision to grant appellees' motion. Appellants presented evidence that they sustained damages in the amount of $1,400 (including rent, additional moving expenses, and attorney fees) as a result of appellees failure to leave the premises by December 10, 1994, as promised. Appellants also presented evidence that they spent $500 to $600 to repair damage, arguably beyond that reasonably expected to be found in the home, that appellees allegedly caused to the interior walls upon vacating the premises. As to these claims, and these claims ONLY, appellants presented sufficient evidence for a jury to consider.
Interestingly, the trial court acknowledged on the record that appellants did testify as to the damages they sustained for alternative housing as well as the repairs they made to the interior walls. As to this evidence, and presumably the damages appellants presented as to their moving expenses and legal fees, the trial court dismissed appellants' testimony because the jury was without any evidence to determine the "reasonableness" of appellants' claims. The trial court's ruling was erroneous. Despite the parties' attempt to make this case as complex as possible, the issues presented are fairly uncomplicated and well within the collective knowledge of the jury to understand and determine. Appellants were not required to present expert testimony, by way of example, to establish beyond all doubt the "reasonableness" of the $60 they spent to rent a van from which to transport their belongings a second time as a result of appellees' breach. While some sort of expert testimony may have been helpful in the jury's determination of the "reasonableness" of appellants claimed expenses, such evidence was not required to be presented in this case.
For the claims we have highlighted, the trial court erred in granting appellees' motion for a direct verdict. Appellants' fifth assignment of error is with merit in part.
In the remaining assignments of error, appellants allege additional "errors" that the trial court committed during the underlying trial of this case. In the first assignment of error, appellants argue that the trial court improperly restricted counsel's jury voir dire. Specifically, appellants objected to the following exchange between counsel and the trial court:
 "APPELLANTS' COUNSEL: (asked to a potential juror) Lets say the seller [of a home you purchased] told you you could have the house on a certain date and you weren't able to have it for a month-and-a-half after that date and that caused you unexpected expense. Who should pick up that expense?
 "THE COURT: * * *, I'm going to intervene. I don't think it's fair to ask [jurors] hypothetical questions [as to] how they might find. If you want to ask them about their background or experience, that might relate to qualifications but you're not going to pursue this line of questing.
"APPELLANTS' COUNSEL: Okay. * * *"
The scope and extent of jury voir dire are within the discretion of the trial court. State v. Bedford (1988), 39 Ohio St.3d 122,129; Krupp v. Poor (1970), 24 Ohio St.2d 123, 126. As such, the trial court's actions in this regard may only be reversed on appeal upon a determination that the court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Steiner v. Custer
(1940), 137 Ohio St. 448; Conner v. Conner (1959), 170 Ohio St. 85;Chester Township v. Geauga Co. Budget Comm. (1976), 48 Ohio St.2d 372."State v. Adams (1980), 62 Ohio St.2d 151, 157-158. Accord Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In the present case, the trial court limited the scope of counsel's voir dire to issues related to the jurors' qualifications to sit on this case. Appellants have failed to establish that the trial court abused its discretion in limiting jury voir dire to these matters. Appellants' first assignment of error is without merit.
In the second, third, and fourth assignments of error, appellants allege that the trial court erred in several of its evidentiary rulings. Specifically, appellant objects to the following: appellants attempt to introduce an estimate they received to repair the damage done to the interior walls of the home, excluded by the trial court as hearsay; the canceled check appellants wrote for $1,200 to cover additional rental expenses they incurred, excluded by the trial court because there was no indication these expenses were "reasonable"; and a listing prepared by an expert witness who testified at trial as to the repairs necessary to the downstairs bathroom, excluded by the trial court as cumulative.
The admissibility of evidence rests with the sound discretion of the trial court. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. In this case, we can find no abuse in the trial court's evidentiary rulings except for the exclusion of the $1,200 check appellants used to pay for additional rental expenses. The trial court excluded this document of the basis that there was no way for the jury to determine the "reasonableness" of appellants' alleged rental expenses. Based on our analysis to appellants' fifth assignment of error, as previously discussed, the trial court's theory for excluding this evidence was incorrect. Consequently, appellants' third assignment of error has merit. Appellants' second and fourth assignments of error are without merit.
Finally, in the sixth assignment of error, appellants assert that the trial court erred in failing to grant appellants' request for a trial by jury. Appellants' assertion is spurious. The record clearly establishes that a jury was impaneled and ready to determine the issues involved in this case assuming that appellants presented sufficient evidence to create a jury question. For the vast majority of appellants' wide ranging claims, appellants failed to meet their burden, and, pursuant to the law of the case, all of the claims except those we have highlighted in this opinion are lost. Appellants' failure to present sufficient evidence, and the trial court's erroneous granting of a directed verdict as to some of appellants' claims, do not amount to a denial of appellants' right to a jury trial. Appellants' sixth assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. It is further ordered that the parties share equally the costs of this proceeding. _________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J.,
CHRISTLEY, J., concur.
[1] Additional claims were made against the listing agent, Joan Higerd, the real estate company, Century 21 Launders 
Associates, and the sellers of a home appellees were scheduled to move into sometime in January 1995. These additional claims were dismissed by the trial court prior to trial of this matter.
[2] While we question the propriety of appellants seeking reimbursement of attorney fees they paid toward their forcible entry and detainer action, we note that appellees failed to object to this evidence.