JOURNAL ENTRY and OPINION
{¶ 1} Appellant William Tiderman appeals his conviction and assigns the following errors for our review:
 {¶ 2} "I. The trial court erred in denying appellant's motion for acquittal on counts 1 through 5 made pursuant to Ohio Criminal Rule 29 where there was insufficient evidence as to the victim's age."
 {¶ 3} "II. Appellant's conviction for rape on counts one through five of the indictment were against the manifest weight of the evidence."
 {¶ 4} "III. The trial court erred in denying appellant's motion for acquittal on counts six through 43 of the indictment where the state failed to present any evidence of force."
 {¶ 5} "IV. Appellant's conviction for rape on counts six through 43 of the indictment were against the manifest weight of the evidence."
 {¶ 6} "V. The trial court erred in not granting appellant's motion to compel a more specific bill of particulars."
 {¶ 7} "VI. The trial court erred in denying appellant's request for a continuance of the trial date, thereby denying appellant effective assistant [sic] of counsel, due process of law and a fair trial."
 {¶ 8} Having reviewed the record and pertinent law, we affirm the trial court's decision regarding assigned errors three to six, and we remand to the trial court for resentencing in light of the State's concession as to assigned errors one and two. The apposite facts follow.
 {¶ 9} The history of the case reveals on April 3, 2003, appellant William Tiderman's daughter, a high school freshman, reported to her guidance counselor that Tiderman had been sexually molesting her. The guidance counselor conveyed the information to the Cleveland Police Department which then interviewed the victim. After speaking with the victim, the police detectives contacted Tiderman by telephone, told him something was "wrong" with his daughter, and asked him to come to MetroHealth Medical Center to see her. Tiderman promised to go to the hospital, but never showed and remained at large until his capture several months later as a result of an anonymous tip.
 {¶ 10} On June 12, 2003, the Cuyahoga County Grand Jury indicted Tiderman on forty-three counts of rape of his daughter. Tiderman pled not guilty, and on October 20, 2003, the case proceeded to a jury trial.
 {¶ 11} The victim testified she was born February 8, 1987. When she was seven, she met her biological mother for the first time. Since then, she has had little or no contact with her. She stated she had lived with Tiderman in numerous locations in and around Cleveland. Tiderman never held a steady job and abused alcohol on a daily basis.
 {¶ 12} The victim stated on Halloween in 1999 or 2000, while preparing for bed, Tiderman entered her room, disrobed, and proceeded to engage in sexual intercourse with her. Thereafter, it occurred at least once or twice a week for the next three years. The rapes progressed to the point where she slept in Tiderman's bed on a nightly basis. She stated Tiderman had a proclivity towards certain types of sexual positions, and at times demanded oral sex from her. The victim testified Tiderman rarely used a condom and there was a time she thought she might be pregnant. When she told Tiderman, he said if she was pregnant, he would take her to get an abortion. Tiderman cautioned her not to tell anyone about the rapes because if she did, she would be taken away from him.[1]
 {¶ 13} The victim further stated Tiderman would beat her on an ongoing basis, more often when he was drunk. She would ask him to stop, but the next day he would beat her again. Tiderman once kicked her in the face while wearing his work boots. Additionally, he would beat her if she befriended boys of different races, especially black boys.
 {¶ 14} Randell Johnson testified Tiderman and the victim lived with him for approximately four months in 2003. He provided separate bedrooms for Tiderman and the victim. However, Johnson testified one day he passed Tiderman's bedroom and saw him and the victim sleeping clothed only in underwear and naked from the waist up. Johnson stated he had heard rumors about incestuous behavior between Tiderman and the victim. Consequently, Johnson asked Tiderman to leave his home because he did not approve of what he had seen.[2]
 {¶ 15} Additionally, Johnson testified he did not approve of Tiderman beating the victim. He did not personally see Tiderman administer any of the beatings, but had seen bruises on the victim's face, ribs, legs, and arms. He stated the victim often attempted to use makeup to hide these bruises. Johnson testified he spoke to Tiderman about the beatings and told him he did not want these beatings to take place in his house, but Tiderman's response was "where am I suppose to do it at?"[3]
Finally, Johnson testified the victim told him Tiderman beat her because she gave sexual gratification to someone else.[4]
 {¶ 16} Christine Seidowsky testified she was Tiderman's girlfriend on and off for about six years and had lived with Tiderman and the victim. According to Seidowsky, the victim confided to her that she had been having a sexual relationship with Hank Sizemore, a twenty-eight-year-old male. Seidowsky encouraged her to tell Tiderman, and warned if the victim did not, then she would tell Tiderman.
 {¶ 17} On cross-examination, Seidowsky admitted when she asked the victim why she would let a twenty-eight-year-old man have a sexual relationship with her, the victim confided that Tiderman had also been having sex with her.[5] Further, the victim stated Tiderman treated her as if she was his wife.
 {¶ 18} At the conclusion of the trial, the jury found Tiderman guilty on all counts. The trial court sentenced him to a total of fifty years in prison. Tiderman now appeals.
 {¶ 19} In his first and second assigned errors, Tiderman argues there was insufficient evidence as to the victim's age; thus, the rape conviction on counts one through five were against the manifest weight of the evidence. In its brief to this court, the State concedes these assigned errors, and for the following reason, we agree.
 {¶ 20} R.C. 2907.02. provides:
{¶ 21} "(A) (1) No person shall engage in sexual conduct withanother who is not the spouse of the offender or who is thespouse of the offender but is living separate and apart from theoffender, when any of the following applies:
 {¶ 22} "(a) For the purpose of preventing resistance, theoffender substantially impairs the other person's judgment orcontrol by administering any drug, intoxicant, or controlledsubstance to the other person surreptitiously or by force, threatof force, or deception.
 {¶ 23} "(b) The other person is less than thirteen years ofage, whether or not the offender knows the age of the otherperson.
 {¶ 24} "(c) The other person's ability to resist or consent issubstantially impaired because of a mental or physical conditionor because of advanced age, and the offender knows or hasreasonable cause to believe that the other person's ability toresist or consent is substantially impaired because of a mentalor physical condition or because of advanced age.
 {¶ 25} "(2) No person shall engage in sexual conduct withanother when the offender purposely compels the other person tosubmit by force or threat of force."
 {¶ 26} For counts one through five, the State had to prove Tiderman engaged in sexual conduct with the victim when she was under the age of thirteen. The record reveals the victim was born February 8, 1987. The victim testified the first sexual encounter with Tiderman was Halloween night in 1999 or 2000. This is crucial to the validity of the conviction on the first five counts of the indictment. If the first sexual encounter was in 1999, the victim would have been twelve years old, but if it occurred in 2000, she would have been thirteen years old. However, she was not certain as to whether it was 1999 or 2000. Because the State failed to overcome this uncertainty, we sustain the first two assigned errors and reverse convictions for counts one through five.
 {¶ 27} In his third assigned error, Tiderman argues the trial court erred in denying his motion for acquittal because the State failed to prove any evidence of force. We disagree.
 {¶ 28} A motion for a judgment of acquittal is properly denied when reasonable minds can reach different conclusions as to whether each material element of a crime had been proved beyond a reasonable doubt.[6]
 {¶ 29} "Force" is defined by R.C. § 2901.01(A) as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." "Threat" can be direct or by innuendo. The Supreme Court further elaborated in State v.Eskridge:[7]
 {¶ 30} "The force and violence necessary to commit the crimeof rape depends upon the age, size and strength of the partiesand their relation to each other. With the filial obligation ofobedience to a parent, the same degree of force and violence maynot be required upon persons of tender years, as would berequired were the parties more nearly equal in age, size andstrength. [State v. Labus [1921], 102 Ohio St. 26, 38-39.]"
 {¶ 31} When a person exercising parental authority over a child has sexual intercourse with that child, the force or threat of force required to establish the offense of forcible rape is minimal.[8] When a father sexually abuses his child, the coercion is inherent because of the parental authority. Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.[9]
 {¶ 32} In the instant case, we are confronted with a victim having had very little or no contact with her biological mother. Her whole world relied, revolved around, and depended on her father. Her father never maintained consistent employment. He was a chronic alcoholic, very poor provider, and frequently moved from house to house within days or weeks. The victim in this case is a teenager who was abused in her pre-teen years. The sexual abuse continued several times a week for approximately three to four years. The victim suffered severe beatings in addition to the sexual abuse.
 {¶ 33} In such a case, we conclude the evidence substantially established force. Moreover, her father told her that she would be taken away from him if she told anyone. Consequently, the youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, create a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.[10]
 {¶ 34} We conclude the forcible element of rape was properly established to sustain Tiderman's conviction. Accordingly, we overrule his third assigned error.
 {¶ 35} In his fourth assigned error, Tiderman argues his conviction was against the manifest weight of the evidence because the State failed to show any evidence of force. Our disposition of Tiderman's third assigned error renders the fourth assigned error moot.
 {¶ 36} In his fifth assigned error, Tiderman argues the trial court erred in not granting his motion to compel a more specific bill of particulars because the indictment was vague as to the times and dates of the alleged offenses. We disagree.
 {¶ 37} In cases of child sexual abuse, young victims often are unable to remember exact dates and times when the offenses occurred, especially when the crimes involve a repeated course of conduct over a lengthy period of time.[11] Because the precise date and time of the offense of rape are not essential elements of that crime, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution.[12]
 {¶ 38} Nevertheless, when an accused requests a bill of particulars stating a more specific time when an alleged offense occurred, a trial court must make two inquiries: whether the State possesses more specific information about the date, time, and place of the offense, and whether that information is material to the accused's ability to present a defense. That may happen when the accused asserts an alibi and claims that he was elsewhere during part, but not all of the time period specified for the offense.[13] When these two questions are answered in the affirmative, the court must order the State to provide the information requested in a bill of particulars.[14]
 {¶ 39} In the instant case, Tiderman has not shown that the State possessed more specific information regarding the dates and times of the offenses. Moreover, Tiderman has failed to demonstrate how the lack of a more specific date for the rape offenses prejudiced his defense. Tiderman did not rely upon an alibi to claim that he was elsewhere during part of the time frame specified when these rapes occurred. Rather, the evidence established a prolonged period of sexual abuse of his daughter. Under these circumstances, the failure to supply a specific date for these rape offenses did not prejudice Tiderman's ability to prepare his defense.[15] Accordingly, we overrule Tiderman's fifth assigned error.
 {¶ 40} In his sixth assigned error, Tiderman argues the trial court erred in denying his request for a continuance of the trial date. We disagree.
 {¶ 41} It is a basic due process right and indeed essential to a fair trial that defense counsel be afforded the reasonable opportunity to prepare his case.[16] In considering how these constitutional guarantees impact a motion for a continuance, the United States Supreme Court has stated:
{¶ 42} "The matter of continuance is traditionally within thediscretion of the trial judge, and it is not every denial of arequest for more time that violates due process * * *. There areno mechanical tests for deciding when a denial of a continuanceis so arbitrary as to violate due process. The answer must befound in the circumstances present in every case, particularly inthe reasons presented to the trial judge at the time the requestis denied."[17]
 {¶ 43} It is well settled in Ohio that the granting or denial of a continuance is a matter within the sound discretion of the trial court.[18] Further, the Ohio Supreme Court has likewise refrained from adopting a mechanical test to determine when a trial court has abused its discretion in granting or denying a motion for a continuance; instead, the Court has endorsed the use of a balancing test which takes cognizance of all competing considerations.[19]
 {¶ 44} Judicial discretion is the option which a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case.[20]
 {¶ 45} In Unger, the Ohio Supreme Court stated that "* * * [w]eighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."[21] The court then described objective factors by which a judge may assess the propriety of a motion for continuance, stating that a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.[22]
 {¶ 46} In the instant case, on October 20, 2003, the scheduled date of trial, counsel requested a continuance. Counsel stated he had limited time to speak with Tiderman, had sent out subpoenas, and had spoken with three other witnesses; therefore, he needed time to prepare his case. Counsel further stated he had shared this information with the prosecution two weeks prior to trial. The trial court denied the motion for continuance, stating the arraignment was on August 14, pretrials were held on August 25, September 8, October 7, and full discovery had been exchanged in the case.
 {¶ 47} The trial court was not, however, presented with any facts to indicate that defense counsel was unable to interview the witnesses. Counsel had thirteen days from the last pretrial to locate and talk to these witnesses, yet at the time of the request for the continuance, there was no showing of what efforts, if any, had been made to locate these witnesses. Similarly, while defense counsel asked for additional time to locate defense witnesses, he presented no facts to the court to indicate their identity, the materiality of their testimony, or the reasonable likelihood that they could be found. Finally, defense counsel gave no specifics to support his contention that he needed more time to adequately prepare a proper defense. Counsel did not, for example, state that he was otherwise committed, that he was unable to obtain sufficient discovery from the prosecutor, or that he needed additional time to obtain evidence critical to his defense, such as psychiatric evaluation or medical records.
 {¶ 48} Having examined the facts and circumstances herein which existed at the time of the request for the continuance, this court cannot find that the trial court abused its discretion in refusing defense counsel additional time to prepare his case. Accordingly, we overrule Tiderman's sixth assigned error.
 {¶ 49} Judgment affirmed in part, reversed in part and case remanded for resentencing in view of the State's concession as to counts one through five.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Gallagher, J., Concur.
[1] Tr. at 377.
[2] Tr. at 332.
[3] Tr. at 342.
[4] Tr. at 349.
[5] Tr. at 509-510.
[6] State v. Nelson (Feb. 25, 1999), Cuyahoga App. No. 73289, citing State v. Beaver (1997), 119 Ohio App.3d 385, 390, appeal dismissed (1997), 79 Ohio St.3d 1504.
[7] (1988), 38 Ohio St.3d 56, paragraph one of syllabus.
[8] State v. Eskridge, supra at 58.
[9] Id.
[10] Id. at 58-59.
[11] State v. Barnecut (1988), 44 Ohio App.3d 149.
[12] State v. Sellards (1987), 17 Ohio St.3d 169; State v.Lawrinson (1990), 49 Ohio St.3d 238.
[13] Id.
[14] Id.
[15] Barnecut, supra.
[16] See, White v. Ragen (1945), 324 U.S. 760, 763-764; Hawkv. Olson (1945), 326 U.S. 271; Powell v. Alabama (1932),287 U.S. 45.
[17] Ungar v. Sarafite (1964), 376 U.S. 575, 589-590.
[18] State v. Unger (1981), 67 Ohio St.2d 65, 67; State v.Bayless (1976), 48 Ohio St.2d 73.
[19] State v. Unger, supra.
[20] Krupp v. Poor (1970), 24 Ohio St.2d 123, paragraph two of the syllabus.
[21] State v. Unger, supra at 67.
[22] Id. at 67-68.