**In the Matter of Ronald A. HART.**

Supreme Judicial Court of Maine.

Argued June 14, 1990.

Decided July 20, 1990.

Merle W. Loper (orally), Portland, for Committee.

Ralph I. Lancaster (orally), Pierce, Atwood, Scribner, Allen, Smith, & Lancaster, Portland, for respondent.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

PER CURIAM.

This is a judicial disciplinary proceeding brought before the Supreme Judicial Court in exercise of its original jurisdiction.[1] The Committee on Judicial Responsibility and Disability, by its report dated December 1, 1989, alleges that Probate Judge Ronald A. Hart violated numerous Canons[2] of the Code of Judicial Conduct in connection with his handling of alleged attorney misconduct on the part of Rita M. Farry. The alleged misconduct stems from attorney Farry's efforts on behalf of her client to obtain an expedited hearing on a motion for appointment of an interim trustee of the Mary

1. In that capacity, the Court makes both findings of fact and conclusions of law. *See In re Benoit,* 487 A.2d 1158, 1161 n. 1 (Me.1985).

2. The Committee alleges that Judge Hart violated Canons 1, 2, 2A, 3A(1)–(4) & 3C(1).

Francis Ross Trust.[3] Specifically, the Committee contends that: 1) Judge Hart improperly ordered attorney Farry to appear before him for hearing by deliberately making a false statement on the face of the order; and 2) Judge Hart's conduct at the hearing was unfair, undignified and discourteous. Pursuant to the Court's procedural order the Committee has the burden of proving the allegations by a preponderance of the evidence.

We find the following facts: Mary Francis Ross died on December 16, 1980. She had two sons, Rodney E. Ross III and John A. Ross. By her will she left all of her property to her executor, Lewis B. Swett, in trust for the benefit of her grandchildren then living and afterwards born. Lewis Swett registered the trust in the Sagadahoc County Probate Court. On August 6, 1988, police discovered that Lewis Swett had died in his home in Boothbay Harbor. The Ross will contained no provision for the appointment of a successor trustee.

Three parties became involved in proceedings to appoint a successor trustee: John Ross, who has five children; Karen Boone, the ex-wife of John Ross and the biological mother of two of his children; and Rodney Ross, who was about to become the father of his first child. Rodney Ross retained attorney Farry to represent his interest in the trust. Rodney sought to: 1) have a successor trustee appointed as quickly as possible; and 2) have himself named as successor trustee.

On August 12, attorney Farry called Judge Hart. She explained that she would be filing a motion for appointment of an interim trustee and inquired whether he would recuse himself as he had in a related

proceeding some years earlier. Judge Hart responded that he would not recuse himself absent good cause shown.[4] Judge Hart further advised that her petition was premature because the immediate responsibility for protecting the trust assets fell to the personal representative of the estate of Lewis Swett. Shortly after her conversation with Judge Hart, attorney Farry contacted Androscoggin County Probate Judge Laurier T. Raymond. She told Judge Raymond that she thought Judge Hart had a conflict and would recuse himself. Judge Raymond responded that if Judge Hart recused himself he, Judge Raymond, would try to accommodate her with a prompt hearing.

On August 17, attorney Farry filed two petitions in the Sagadahoc County Probate Court, one for appointment of an interim trustee and one for transfer of the trust to an adjoining county. In her cover letter to the Register, attorney Farry requested that he "kindly bring these to the immediate attention of Judge Hart" and further explained that should Judge Hart recuse himself "Judge Raymond is available for a prompt hearing on the Petition for Interim Trustee." Within a day after the petitions were filed, the Register informed attorney Farry that Judge Hart would hear the petitions on September 6, the next regularly scheduled court date.[5]

On August 19, attorney Farry called Judge Raymond. She explained that Judge Hart was "unavailable" and asked him whether he could hold an immediate hearing. Judge Raymond said that he would meet with all counsel in his law office on the following business day. After Judge Raymond finished speaking with attorney Farry, he contacted the Sagadahoc Regis-

---

3. The question of the propriety of attorney Farry's conduct is not directly at issue in this case. That matter was referred to the Board of Overseers of the Bar, the agency to which this Court has given responsibility concerning the conduct and discipline of attorneys. *See* M.Bar.R. 4(a) & (d)(6)–(10).

4. In 1978, Judge Hart recused himself from a guardianship proceeding involving John Ross because of an imputed conflict of interest resulting from his law partner's representation of

John's ex-wife. Because he was no longer associated with that law partner and had not been for some time, Judge Hart saw no reason to recuse himself from the appointment proceedings.

5. This was the same date that Judge Hart assigned to be heard an earlier petition for appointment of an interim and permanent trustee filed on behalf of John Ross, and joined by the attorney for Karen Boone.

try of Probate to ascertain the status of the case. Shortly thereafter, Judge Hart called Judge Raymond and the two discussed the matter. Later that day, at the instigation of Judge Hart, attorney Farry and the attorneys for John Ross and Karen Boone participated in a conference call with him. Judge Hart indicated that he would immediately appoint Key Bank and attorney David King as interim co-trustees. No party objected. Judge Hart testified that he then addressed attorney Farry as follows:

'Ms. Farry, I'd like you to appear before me on September 6 at 8:30 a.m. in the morning to tell me why you lied to Judge Raymond'.... [T]here was another pause, and she responded, 'What do you mean by that?' ... I said, 'You think very carefully about what I've asked and be prepared to explain it to me when you come in on September 6.'

On August 26, attorney Farry filed two documents in the Sagadahoc County Probate Court. The first was a "Notice of Removal" removing the appointment proceedings to the Superior Court pursuant to M.R.Prob.P. 71A.[6] The second was a "Notice of Dismissal" of her petition to transfer the trust to an adjoining county. On August 29, the Register transferred the file to the Superior Court pursuant to the "Notice of Removal." Although the "Notice of Dismissal" purported to be voluntary pursuant to M.R.Prob.P. 41(a)(2),[7] Judge Hart treated the transfer petition as a probate, rather than a civil, proceeding[8] and entered the following order on the bottom of the "Notice of Dismissal:"

8/26/88

Attorney Farry to be personally present before this Court, Tuesday, (8:30 a.m.) Sep. 6, 1988 to discuss further proceedings pursuant to 41(a)(1) M.[R.]P.P.[9]

/s/ Ronald A. Hart, Judge

Attorney Farry appeared before Judge Hart on September 6. The proceeding took place in Judge Hart's chambers with Judge Hart, the Register, attorney Farry and a court reporter present.[10] The proceeding began at 10:05 a.m. and lasted until 11:43 a.m. No one spoke except Judge Hart. With exaggerated care and deliberation, Judge Hart related his version of attorney Farry's conduct. By his own motion, he formally marked exhibits and entered them in the record. He characterized attorney Farry's conduct as "contemptuous, contumacious, insubordinate, obstructionist, and egregious as I have ever seen in the 20 years I have been here." He further stated that "[t]his court is of the opinion that Attorney Farry did practice gross fraud and deceit lying to [Judge Raymond]." He found probable violations of Rules 3.7(e)(1)(i), 3.1(e), 3.2(f)(4), 3.2(f)(3), 3.1(a) and 3.2(c)(2) of the Maine Bar Rules. He concluded the proceeding as follows:

You will prepare an original transcript, Madam reporter, a copy for this court. The original will be filed with the [Board of Overseers of the Bar], and if Attorney

---

**6.** M.R.Prob.P. 71A(a) provides for removal "to the Superior Court in the county in which the Probate Court where the proceeding was commenced sits."

**7.** M.R.Prob.P. 41(a)(2) provides as follows:

(a) **Voluntary Dismissal; Effect Thereof.**
....
(2) *Civil Proceedings.* Rule 41(a) of the Maine Rules of Civil Procedure governs procedure in civil proceedings in the Probate Courts.
M.R.Civ.P. 41(a) provides that "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs...."

**8.** M.R.Prob.P. 2 provides as follows:

There shall be two forms of proceedings to be known as "probate proceedings" and "civil proceedings."
(a) **Probate Proceedings.** "Probate proceedings" are all proceedings within the exclusive jurisdiction of the Probate Courts.
....
(b) **Civil Proceedings.** "Civil Proceedings" are all proceedings within the concurrent jurisdiction of the Probate Courts.

**9.** M.R.Prob.P. 41(a)(1) provides that "[n]o probate proceeding may be dismissed at the instance of the applicant or petitioner save upon the order of the court *and upon such terms or conditions* ... as the court deems proper." (emphasis added).

**10.** The court reporter was present pursuant to attorney Farry's specific request.

Farry wishes to have a copy of the record, she may order it. The hearing this morning is concluded, and all further proceedings will be taken upon acknowledgment by the [Board of Overseers of the Bar] of this complaint to be filed as soon as this transcript is ready.

### Charge 1

The Committee charges that the August 26 order requiring attorney Farry's presence for a September 6 hearing "to discuss further proceedings pursuant to [M.R. Prob.P.] 41(a)(1)" was improper because the reason stated on the face of the order was pretextual. The Committee contends that once the proceedings were removed to the Superior Court, there was nothing on which the "Notice of Dismissal" could operate and hence there was nothing relating to the motion to transfer left to discuss. As support for its allegations, the Committee points to the testimony of Judge Hart:

Q Is that the reason that you entered the order that she appear on September 6, to discuss Probate Rule 41(a)?

A That, coupled with the fact that I wanted her to come up—so you might say it was two-fold—I caught the technical inappropriateness of her request; and, secondly, I had an apprehension, sincerely, that where she had removed her action to the Superior Court that she might felt [sic] she did not have a requirement to respond to my request on the 19th to appear and discuss the matter with me.

. . . .

Q Did you think there were any issues that were necessary to discuss with Ms. Farry concerning her notice of dismissal?

A Not really. I think that if it had occurred to me on the 6th, I may have said to her, you know, that was, obviously, a technical proced—improcedu—procedural mistake, but it's not fatal. It's not a problem. Nothing substantive, nothing big.

. . . .

Q At the time you entered that order on the bottom of her petition, did you consider that there was any possibility that you would deny the request to dismiss as you interpreted it?

A None. None whatsoever, no. None.

■ While the Committee is correct in observing that once the proceedings were properly removed there was nothing to discuss with respect to the *substance* of the proceedings, it fails to appreciate that there was much to discuss regarding attorney Farry's conduct in those proceedings. Canon 1 of the Code of Judicial Conduct obliges judges to "enforc[e] . . . high standards of conduct so that the integrity and independence of the judiciary may be preserved." Similarly, Canon 3(B)(3) provides that "[a] judge should take or initiate appropriate disciplinary measures against a lawyer for unprofessional conduct of which the judge may become aware." Accordingly, the Code of Judicial Conduct provided Judge Hart with explicit authority to require attorney Farry to appear before him to discuss her conduct in the proceedings.

With respect to the reason given on the face of the order. Judge Hart concluded that pursuant to M.R.Prob.P. 41(a)(1) the motion to transfer was itself a probate proceeding within the meaning of M.R. Prob.P. 2(a) and therefore could not be voluntarily dismissed. In accordance with our previously announced standard, we conclude that the Committee has failed to establish that a reasonable judge would consider this ruling obviously wrong in the circumstances of the case. *See In re Benoit,* 487 A.2d 1158, 1163 (Me.1985). Noting the authority conferred upon him by the Code of Judicial Conduct, as well as that provided by M.R.Prob.P. 41(a)(1), we hold that Judge Hart committed no ethical impropriety by conditioning his consent to the "Notice of Dismissal" on attorney Farry appearing on September 6 to discuss her conduct in the proceedings. The fact that Judge Hart admitted that he feared she would not appear once the proceedings were removed to the Superior Court does not, by itself, render the order pretextual.

### Charge 2

■ The Committee charges that Judge Hart's conduct of the September 6 proceeding was unfair, undignified and discourte-

ous. While the procedure employed by Judge Hart at the September 6 hearing may have resulted in discourtesy or unfairness, we hold that it does not rise to the level of seriousness contemplated by the rules governing judicial misconduct. *See Rules of the Committee on Judicial Responsibility and Disability* (2)(H)(i). In reaching this determination, we emphasize the following facts. First, the hearing was conducted in a private setting, with only Judge Hart, attorney Farry and court personnel present. Second, the record shows that Judge Hart, while appearing at times strained, did not raise his voice or use undignified language. Third, there was no pattern of misconduct; rather, it was a single isolated incident. *See Rules, supra,* (1)(B)(iv). Finally, the proceeding was provoked by perceived attorney misconduct that Judge Hart had an obligation to address. In conclusion, we note that the Rules governing judicial misconduct confer upon the Committee the authority to prosecute only those instances of judicial misconduct that exceed in seriousness the mistakes and frailties of the ordinary judge.

The entry is:

Upon full consideration of the premises, it is ADJUDGED that Judge Ronald A. Hart has committed no ethical violations warranting sanction by this Court.

All concurring.