# Order

**Michigan Supreme Court**
**Lansing, Michigan**

January 12, 2006

128666(4)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

IN THE MATTER OF

THE HONORABLE DANA FORTINBERRY          SC: 128666
JUDGE, 52ND DISTRICT COURT                JTC: Formal Complaint No. 78

BEFORE THE JUDICIAL TENURE COMMISSION

_____/

      On order of the Court, the Judicial Tenure Commission has issued a Decision and Recommendation for Discipline, and the Honorable Dana Fortinberry has consented to the Commission's findings of fact, conclusions of law and recommendation of public censure.

      As we conduct our de novo review of this matter, we are mindful of the standards set forth in *In re Brown*, 461 Mich 1291, 1292-1293 (2000):

> [E]verything else being equal:
>
> (1)    misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
>
> (2)    misconduct on the bench is usually more serious than the same misconduct off the bench;
>
> (3)    misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
>
> (4)    misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
>
> (5)    misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
>
> (6)    misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
>
> (7)    misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship.

The JTC should consider these and other appropriate standards that it may develop in its expertise, when it offers its recommendations.

In this case those standards are being applied to the following findings and conclusions of the Judicial Tenure Commission, which we adopt as our own:

1. Respondent has been a judge of the 52nd District Court, 2nd Division, since January 1, 2003.

2. Kelley Kostin (née Ott), an attorney and former magistrate in the 52nd District Court, is married to Robert Kostin, a local attorney. Mr. Kostin was previously married to Judith Kostin.

3. Judith Kostin died on September 17, 1989, while still married to Robert Kostin.

4. Following a postmortem examination on September 18, 1989, the Oakland County Medical Examiner, Dr. Bill Brooks, specifically determined the cause of death to be carbon monoxide intoxication, and the manner of death to be suicide. Dr. Brooks wrote in his report, which was incorporated into the White Lake Township police report:

> "We believe that Judith Kostin, a 46-year-old white female, died as the direct result of carbon monoxide intoxication and that this event was self-inflicted. Scene circumstance investigation was entirely consistent with such an act with a note consisting of a series of entries implying suicidal intent. Apparently, this individual was involved in domestic problems. There was no evidence of trauma or of assault upon the body inconsistent with the terminal event. The deceased appeared to be in otherwise good health. Toxicologic examination of body fluids reserved at the time of the autopsy are separately appended. No additional autopsy or postmortem investigation is anticipated by this office at this time."

5. Kelley Kostin was a candidate for an open seat on the 52nd District Court in the 2004 primary election.

6. Colleen Murphy, who was at the time was a magistrate in the 52nd District Court, was a candidate for the same seat as Kelley Kostin.

7. Respondent supported Colleen Murphy for the position of judge of the 52-2 District Court.

8. On July 20, 2004, Respondent sent a five-page letter to Dave Curtis, Vice President of the Oakland County Deputy Sheriff's Association (The "Association").

9.  The letter concerned the Association's endorsement of Kelley Kostin in the judicial primary for the 52nd District Court.

10. In that letter, Respondent made the following statements:

"There is another factor that your members should know about in evaluating the legitimacy of the endorsement recommended by [Deputies] Hubanks and McClure. I know they could not have informed your members of this issue, because I am certain that the [Oakland County Deputy Sheriff's Association] would not have endorsed as it did if the facts had been fully explained. These are the facts:

"In 1989, Kelley Ott was a law clerk at Oakland County Circuit Court, and she had a sexual affair with attorney Bob Kostin, who was at that time living in White Lake with his third wife [Judith Kostin]. The previous Mrs. Kostin [Judith Kostin] found out about the affair, and shortly thereafter was found dead at their home. Due to the circumstances of the death, a police investigation was launched, albeit quietly because the then-and-current White Lake Township Police Chief, Ron Stephens, was a neighbor and friend of Bob Kostin. The investigation was inconclusive, and the case was closed as a suicide. Chief Stephens sealed the records of the investigation and they remain sealed to this day. According to another neighbor, Kelley Ott moved into Bob Kostin's home less than a month after Mrs. Kostin's death. Kelley Ott and Bob Kostin married in the mid-1990's.

"The questions raised by these facts are obvious, but the most important question is what such facts say about the moral fiber of Mr. and Mrs. Kostin. Is this the type of person your members want as a judge? I chose not to publicize the above incident during the 2002 campaign because I wanted to win on my own merits. Colleen Murphy has chosen not to bring it up for the same reason. As law enforcement officers, however, you deserve to know the truth."

11. Respondent asserted as "fact" that:

a.  Kelley Ott (while a law clerk in Oakland County Circuit Court) had a sexual affair with Robert Kostin in 1989, when he was married to another woman (Judith Kostin):

b.  Judith Kostin found out about the affair shortly before she was found dead in her home;

c.    The circumstances of the death launched a police investigation, which was conducted "quietly" as the White Lake Township Police Chief, Ron Stephens, was a neighbor and friend of Grievant;

d.    The police investigation was inconclusive and the case was closed as a suicide.  Chief Stephens sealed the records regarding the investigation and they remained sealed to the day Respondent issued the letter; and

e.    A neighbor stated that Kelley Ott had moved into Bob Kostin's house less than a month after his wife's death.

12.    If a hearing were held, White Lake Township Police Chief Ronald Stephens would testify that the police investigation regarding the death of Judith Kostin was not done "quietly," and in fact was conducted as a standard investigation by the White Lake Township Police Department.

13.    If a hearing were held, White Lake Township Police Chief Ronald Stephens would testify that he and Robert Kostin were not friends or neighbors at the time of the investigation.

14.    If a hearing were held, White Lake Township Police Chief Ronald Stephens would testify that no aspect of the police investigation was "sealed" by the White Lake Township Police Department or Chief Stephens.

15.    The police investigation into the death of Judy Kostin was not "inconclusive," as there was an official determination that her death resulted from self-inflicted carbon monoxide intoxication.

16.    Respondent had no first-hand knowledge of the truth or falsity of the facts stated in paragraphs 12, 13, 14, and 15, above, or of the representations described in subparagraphs 11.c. and 11.d., above.

17.    Respondent did not undertake to independently verify the truth or falsity of the representations made in her July 20, 2004, letter.

18.    Respondent intended the representations in her July 20, 2004, letter to raise questions regarding the moral fiber of both Robert Kostin and Kelley Ott Kostin.

19.    Respondent admits that her conduct was imprudent, and she deeply regrets any resulting embarrassment she may have brought to the judiciary.

These standards set forth in *Brown* are also being applied to the conclusion of the Judicial Tenure Commission, which we adopt as our own:

Respondent's conduct as admitted and described above constitutes:

(a)　Failure to personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved, contrary to the Code of Judicial Conduct, Canon 1;

(b)　Failure to avoid all impropriety and appearances of impropriety to ensure that public confidence in the judiciary was not eroded, contrary to the Code of Judicial Conduct, Canon 2A; and

(c)　Failure to conduct oneself at all times in a manner which would promote the public confidence in the integrity and impartiality of the judiciary, contrary to the Code of Judicial Conduct, Canon 2B.

After reviewing the Recommendation of the Judicial Tenure Commission, the respondent's consent, the standards set forth in *Brown*, and the above findings and conclusions, we order that the Honorable Dana Fortinberry be publicly censured. This order stands as our public censure.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 12, 2006

*Corbin R. Davis*
Clerk