### 2007 ME 21

### In the Matter of Robert M.A. NADEAU.

Supreme Judicial Court of Maine.

Argued: Nov. 29, 2006.

Decided: Jan. 30, 2007.

---

Cabanne Howard, Esq. (orally), Portland, for Committee of Judicial Responsibility and Disability.

Stephen B. Wade, Esq. (orally), Skelton, Taintor & Abbott, P.A., Auburn, for respondent.

Panel: SAUFLEY, C.J., and DANA, CALKINS, LEVY, and SILVER, JJ.

PER CURIAM.

[¶ 1] The Committee on Judicial Responsibility and Disability asserts that the York County Judge of Probate Robert M.A. Nadeau violated Canon 5(B)(2)(c) of the Maine Code of Judicial Conduct by knowingly misrepresenting facts concerning two of his opponents in the 2004 Democratic Primary. We agree with the Committee in part, but reserve judgment on sanctions until the parties have had sufficient time to brief the issue.

## I. BACKGROUND

[¶ 2] Judge Nadeau currently sits as Judge of the York County Probate Court, a position he has held since his initial election in November 1996, having been re-elected in 2000 and 2004. In June 2004, the Committee received complaints from four candidates opposing Judge Nadeau in the Democratic primary: Donna A. Bailey, Edward L. Caron Jr., Ronald R. Coles, and Susan T.J. Cyr (hereafter collectively referred to as the candidates). The complaints concerned an advertisement placed by Judge Nadeau in several local publications approximately one week before the primary. The advertisement included commentary on each of the candidates in a series of short paragraphs that appeared under the heading "It's not fun to be upfront about those candidates, but it is even worse to be duped. The voters deserve to know about them." The candidates alleged that Judge Nadeau knowingly misrepresented their qualifications in violation of Canon 5(B)(2)(c), which provides that a candidate for appointment to judicial office shall not "knowingly misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent." M.Code Jud. Conduct I(5)(B)(2)(c).

[¶ 3] After an initial investigation, the Committee sought a response from Judge

Nadeau. *See* M.R. Comm. Jud. Responsibility & Disability 1(B)(iii).[1] Judge Nadeau denied making any knowing misrepresentations, and made his own charges of ethical violations against three of the four candidates.[2] The Committee concluded that a hearing was necessary to determine whether Judge Nadeau had violated the Code. *See* M.R. Comm. Jud. Responsibility & Disability 2(A).[3] Judge Nadeau again denied the allegations and questioned the need for a hearing.

[¶ 4] At the hearing, the Committee heard testimony from Bailey, Cyr, and Nadeau. Following deliberations, the Committee dismissed all but three allegations against Judge Nadeau. The surviving allegations were that Judge Nadeau knowingly made misrepresentations of facts in the advertisement by stating: (1) that Bailey was "[o]nce seen in a video, inappropriately pulling an extremely frightened, screaming toddler from his grandparents' arms to take the toddler to her car for a forced visit with the child's allegedly neglectful or abusive parent"; (2) that Caron had "[h]andled less than a handful of cases & has not tried a case in the Probate Court during the past 8 years"; and (3) that Caron "claim[ed] that he will offer legal advice to Veterans, even though judges can't do that under Maine law, Title 4." [4] On July 11, 2005, the Committee reported these three matters to the Maine Supreme Judicial Court pursuant to M.R. Comm. Jud. Responsibility & Disability 2(I).[5]

---

1. M.R. Comm. Jud. Responsibility & Disability 1(B)(iii) provides, in pertinent part:
   If the Committee determines that a complaint is within the Committee's authority and describes conduct that could constitute a violation of the Code of Judicial Conduct, it shall communicate the complaint to the person complained against by providing that person with a copy of the written complaint and shall request a written response.

2. The Committee subsequently dismissed each of Judge Nadeau's allegations as either being without merit or beyond the authority of the Committee.

3. M.R. Comm. Jud. Responsibility & Disability 2(A) provides:
   The Committee shall hold a hearing at the request of a majority of its members or of the judge whose conduct is being investigated. Such hearing shall be had before the Committee with a record. The Committee shall have subpoena power, and every witness shall be sworn.

4. With respect to Bailey and Caron, the complete text of the Judge Nadeau advertisement provides:
   D. Bailey: Was involuntarily removed from the Probate Court's list of court-appointed attorneys in 2003, due to excessive requests for trial delays & failures to file required reports on time. Once seen in a video, inappropriately pulling an extremely frightened, screaming toddler from his grandparents' arms to take the toddler to her car for a forced visit with the child's allegedly neglectful or abusive parent.
   E. Caron: Handled less than a handful of cases & has not tried a case in the Probate Court during the past 8 years. Has historically filed incomplete pleadings on behalf of his clients but has been treated graciously and given extra time by the Court anyway. Seen in advertisements claiming that he will offer legal advice to Veterans, even though judges can't do that under Maine law, Title 4. Admitted that he seeks the office to finish accumulating needed Maine State Retirement System eligibility.

5. M.R. Comm. Jud. Responsibility & Disability 2(I) provides, in pertinent part:
   The Committee shall make findings of fact and shall draw conclusions of law.... If the Committee decides that a charge has been established, it shall report its decision to the Supreme Judicial Court and shall provide the judge and any complainant written notice of its decision to report to the Court.
   In addition, the Order Establishing the Committee On Judicial Responsibility and Disability ¶ 9 provides:
   If after the completion of the Committee's investigation and hearing, if any, the Committee determines (i) that the person under

[¶ 5] By order of the Chief Justice, the matter was assigned to a single Justice of the Court (*Clifford, J.*) to conduct a de novo evidentiary hearing and to report his findings to us. *See In re Ross,* 428 A.2d 858, 860 (Me.1981). A hearing was held before the assigned Justice during which the parties raised three issues of law, including: the meaning of the word "knowingly" in Canon 5(B)(2)(c), the standard of proof in judicial disciplinary matters, and the scope of protected political speech under the First Amendment to the United States Constitution. The Justice entered factual findings and reserved the legal issues for us to consider.

[¶ 6] The Justice found, by clear and convincing evidence, that the comments concerning Bailey were misrepresentations of fact made by Judge Nadeau, in part knowingly, and in part with reckless disregard for the truth. The Justice also found by clear and convincing evidence that the statements concerning Caron's probate experience were misrepresentations of fact made with reckless disregard for the truth but without actual knowledge of their falsity. Lastly, the Justice found that the statement concerning Caron's advertisement targeting Veterans was a misrepresentation of fact made by Judge Nadeau without reckless disregard for the truth or actual knowledge of its falsity. We consider in turn the three legal issues pertinent to this proceeding and then the three individual charges of the Committee.

---

investigation has been convicted of a crime, the nature of which casts into doubt his continued willingness to conform his conduct to the Code of Judicial Conduct as applicable or (ii) that in fact the person has violated the Code as applicable and that the violation is of a serious nature so as to warrant formal disciplinary action, the

## II. DISCUSSION

### A. Introduction

[¶ 7] The Maine Constitution provides that the "judicial power of this State shall be vested in the Supreme Judicial Court, and such other courts as the Legislature shall from time to time establish." ME. CONST. art. VI, § 1. Inherent in the judicial power vested in this Court is the authority to regulate the professional conduct of judges. *In re Benoit,* 487 A.2d 1158, 1170 (Me.1985) ("The Supreme Judicial Court, as the only court established by our state constitution, has the inherent power to prescribe the conduct of judges of all courts, and to discipline judges for their acts ....);" *In re Ross,* 428 A.2d at 868 ("[I]t is incumbent upon the Supreme Judicial Court to exercise that part of the judicial power involved in prescribing the conduct of judges and imposing discipline upon them for misconduct."). This regulatory authority extends to the conduct of judges of probate. *See generally In re Barrett,* 512 A.2d 1030 (Me.1986).

[¶ 8] The Court's regulatory control over the State's judiciary has been codified in 4 M.R.S. § 1 (2006), which provides in relevant part:

The Supreme Judicial Court shall have general administrative and supervisory authority over the Judicial Department and shall make and promulgate rules, regulations and orders governing the administration of the Judicial Department.

In addition, the Legislature has expressly granted the Supreme Judicial Court exclusive authority to superintend "all inferior

---

Committee shall file a report of its findings with the Supreme Judicial Court together with a statement of the alleged charges, a recommendation as to action by the Court, the transcript of any hearing, and any exhibits considered by the Committee. Any further proceedings shall be before the Court.

courts for the prevention and correction of errors and abuses where the law does not expressly provide a remedy" and to prescribe the general rules of court. 4 M.R.S. §§ 7–8 (2006).

[¶ 9] Pursuant to this constitutional and statutory authority, the Court has promulgated the Maine Code of Judicial Conduct. The Code of Judicial Conduct "is founded on the precepts that judges ... must respect and honor the judicial office ... and must strive to maintain and enhance public confidence in our legal system," and is "intended to establish basic standards to govern the conduct of all Maine judges." M.Code Jud. Conduct pmbl. Canon 5(B)(2)(c), made applicable to probate judge elections by Canon 5(C)(1),[6] prohibits a candidate for judicial office from knowingly misrepresenting the qualifications or other facts concerning an opponent.

[¶ 10] "[T]he Supreme Judicial Court has exclusive original jurisdiction over all judicial disciplinary matters." *Mitchell v. Judicial Ethics Comm.*, 2000 ME 83, ¶ 5, 749 A.2d 1282, 1283. We decide each issue of law in accordance with our original jurisdiction. *In re Benoit*, 487 A.2d at 1161 n. 1. Similarly, when a matter of judicial discipline is brought to this Court, we afford no deference to the Committee's report, but rather undertake a de novo review of the factual record, here through a single Justice sitting as a Refer-

ee[7] and when his factual findings involve credibility determinations we defer to those findings unless they are clearly erroneous. *Bd. of Overseers of the Bar v. Dineen*, 481 A.2d 499, 502 (Me.1984). The Committee bears the burden of proving the allegations contained in its report. M.R. Jud. Responsibility & Disability 2(H); *In re Cox*, 553 A.2d 1255, 1255 (Me.1989).

B. The Meaning of "Knowingly" in Canon 5(B)(2)(c)

[¶ 11] The Maine Code of Judicial Conduct Canon 5(B)(2)(c) provides that a candidate for appointment to judicial office shall not "knowingly misrepresent ... [a] fact concerning ... an opponent." M.Code Jud. Conduct I(5)(B)(2)(c).

[¶ 12] The Committee asks the Court to interpret the word "knowingly" to encompass a reckless disregard for the truth, thereby imposing upon judicial candidates a duty to undertake some minimal degree of investigation into the truth of a statement prior to making it.[8] In support of its argument, the Committee contends that a candidate for judicial office should not be allowed to escape culpability under the Code by willful ignorance. We decline the Committee's invitation.

[¶ 13] Because the word "knowingly" is defined in the Code and because its definition is plain and unambiguous, we are not free retroactively to give the word a differ-

---

6. M.Code Jud. Conduct I(5)(C)(1) provides:
   A candidate for election or reelection as judge of probate shall comply with the applicable provision of subsection A(1) and the provisions of section B of this Canon, except as provided in subsections C(2)-(4) of this Canon.

7. The order assigning the single Justice to hear the case described his role as that of a Referee. Neither party objected to that designation. Accordingly, to the extent that the Referee made credibility findings we defer.

*Bd. of Overseers of the Bar v. Dineen*, 481 A.2d 499, 502 (Me.1984).

8. The Committee argues that other jurisdictions have interpreted "knowingly" to include reckless disregard for the truth. *See, e.g., In re Fortinberry*, 474 Mich. 1203, 708 N.W.2d 96 (2006); *In re Chmura*, 461 Mich. 517, 608 N.W.2d 31, 43–44 (2000); and *In re Judicial Campaign Complaint Against Carr*, 74 Ohio Misc.2d 81, 658 N.E.2d 1158 (1995), *aff'd on other grounds*, 669 N.E.2d 956 (Ind.1996).

ent meaning. "Knowingly" is defined in the Code of Judicial Conduct as "denot[ing] actual knowledge of the fact in question." M.Code of Jud. Conduct II(3)(J). The word "knowingly" does not encompass liability for reckless disregard for the truth. *See generally, Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 11, 745 A.2d 378, 384 ("The most fundamental rule of statutory construction is the plain meaning rule. When statutory language is plain and unambiguous, there is no need to resort to any other rules of statutory construction."). Additionally, were it the desire of this Court to expand the definition of "knowingly" to encompass reckless disregard for the truth, we need only amend the Canon. To date, we have not done so.[9] Furthermore, general considerations of fairness and due process counsel against the adoption and application of an expanded definition of "knowingly" after the conduct being assessed has been committed.

■ [¶ 14] Accordingly, we find that the meaning of "knowingly," as defined in Canon II(3)(J), is limited to "actual knowledge of the fact in question," and does not incorporate liability for reckless disregard for the truth.

## C. The Committee's Burden of Proof

[¶ 15] The parties disagree over the appropriate standard of proof for judicial disciplinary proceedings. The Committee argues that under both its procedural rules and case law, the appropriate standard is by a preponderance of the evidence. M.R. Jud. Responsibility & Disability 2(H); *In the Matter of Hart*, 577 A.2d 351, 352 (Me.1990). In contrast, Judge Nadeau argues that under this Court's First Amend-

ment jurisprudence, the appropriate standard is by clear and convincing evidence. *Lester v. Powers*, 596 A.2d 65, 69–70 (Me. 1991). We do not reach this issue, however, because the assigned Justice applied the more stringent clear and convincing evidence standard in concluding that Judge Nadeau knowingly made a misrepresentation of fact in contravention of the Code of Judicial Conduct and, for the reasons that follow, we affirm that conclusion.

## D. The Code of Judicial Conduct Does Not Inappropriately Restrict a Judge's Freedom of Speech

[¶ 16] Judge Nadeau tries to evade disciplinary scrutiny by parsing the language of his statement and asserting that the First Amendment jurisprudence protects each of his comments as political speech. Specifically, Judge Nadeau argues that the First Amendment protects an "opinion" such as "inappropriately," and requires the Court to assign benign meanings to terms open to multiple meanings such as "pulling" and "forced." *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122 (1st Cir. 1997).

■ [¶ 17] At the outset, we find that the meaning of "knowingly," as defined in Canon II(3)(J) and applied in Canon 5(B)(2)(c), meets the strict scrutiny standard applicable to restrictions on political speech under the First Amendment. The Canon is designed to maintain and enhance public confidence in an independent, fair and competent judiciary, which undoubtedly is a compelling state interest. The Canon is narrowly tailored and lies well within the "actual malice" standard

---

**9.** The Committee stated at oral argument that should we decline to expand the meaning of "knowingly," it would formally petition the Court for an amendment to Canon II(3)(J) to incorporate reckless disregard in the definition. The Committee should not consider the Court's opinion herein as being in any way hostile to that suggestion.

set forth in *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and extended to the arena of political campaigns in *Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982).

### E. Count I of the Committee's Report

[¶ 18] In Count I of its report to the Court, the Committee asserts that Judge Nadeau violated Canon 5(B)(2)(c) because the advertisement "seriously misrepresented" the court-ordered visitation, conducted by Bailey (acting as the child's guardian ad litem) and captured on videotape. The Committee contends that the videotape does not show Bailey "pulling" the child from the grandparents' arms and that the use of the adjective "forced" creates a false impression that Bailey herself forced the visitation. The Justice found by clear and convincing evidence that:

[T]he representations that Attorney Bailey's actions in pulling the child from his grandparents' arms to take the child for a forced visit were "inappropriate[ ]" were misrepresentations within the meaning of Canon 5(B)(2)(c), and the misrepresentations were authorized by Judge Nadeau with reckless disregard for the truth, and with actual knowledge that Attorney Bailey's actions were not inappropriate in any way . . . .

[¶ 19] The record fully supports the Justice's finding that the claim in the advertisement that Bailey was "[o]nce seen in a video, inappropriately pulling an extremely frightened, screaming toddler from his grandparents' arms to take the toddler to her car for a forced visit with the child's allegedly neglectful or abusive parent" is a misrepresentation of fact. The videotape, shot from a fixed location in the grandparents' home, does not show the exchange of the child from the grandparents to Bailey, which takes place off

camera. Therefore, the claim that Bailey is "seen on a video" "pulling" a child from his "grandparents arms" is a misrepresentation. Additionally, Judge Nadeau made this misrepresentation knowingly because, by his own admission, he had viewed the videotape approximately three years prior to running the advertisement. Moreover, any objective viewing of the videotape at issue can only lead to the conclusion that Bailey not only was *not* inappropriate in her conduct as a guardian ad litem, but that she affirmatively demonstrated calm, appropriate, and effective conduct under the circumstances. Therefore, we find that, with respect to Count I, Judge Nadeau has violated Canon 5(B)(2)(c) of the Code of Judicial Conduct.

### F. Count II of the Committee's Report

[¶ 20] In Count II of its report to the Court, the Committee asserts that Judge Nadeau violated Canon 5(B)(2)(c) by "seriously mischaracteriz[ing]" the extent of Caron's probate experience by stating that Caron had "[h]andled less than a handful of cases and has not tried a case in the Probate Court in the past 8 years." The Committee contends that Caron had handled a substantial number of informal probate matters, and had in fact tried a single probate matter before Judge Nadeau in the last eight years. The Justice found by clear and convincing evidence that:

The statements in this advertisement regarding Caron's Probate Court experience are misstatements and misrepresentations within the meaning of Canon 5(B)(2)(c). . . . Nevertheless, the Court finds . . . that the statements of fact are misrepresentations, made in reckless disregard as to their accuracy. The Court is not persuaded, however, that Judge Nadeau's actions in authorizing the advertisement were done with actual

knowledge of the falsity of the misstatements.

[¶ 21] We agree with the findings of the Justice. Judge Nadeau's statements concerning Caron's alleged lack of probate experience are factually incorrect and undoubtedly constitute misrepresentations. The record reflects that Caron has handled in excess of one hundred and fifty informal probate matters, and had appeared before Judge Nadeau in a contested guardianship matter in October 2000, and recently on four or five other occasions in uncontested matters.

[¶ 22] We affirm the Justice's conclusion that the Committee failed to establish that Judge Nadeau made this misrepresentation with "actual knowledge of the fact in question." M.Code Jud. Conduct II(3)(J). In making the claim, Judge Nadeau relied on his memory and consulted with the staff of the York County Probate Court regarding the number of times Caron had personally tried a contested case before him. Judge Nadeau testified that his claim regarding Caron's lack of experience in Probate Court did not pertain to whether Caron had experience handling informal probate matters because "neither I nor any member of the Registry considers an informal case to be before the court." Although Judge Nadeau acted negligently, even recklessly, by failing to investigate the veracity of the claim, and by failing to treat informal probate proceedings as matters filed with the Probate Court, his conduct, however irresponsible, does not render him susceptible to discipline under the Code of Judicial Conduct.

[¶ 23] Accordingly, we conclude that Judge Nadeau's actions in misrepresenting the Probate Court experience of Caron do not constitute a violation of Canon 5(B)(2)(c) of the Code of Judicial Conduct.

### G. Count III of the Committee's Report

■ [¶ 24] In Count III of its report to the Court, the Committee asserts that Judge Nadeau violated Canon 5(B)(2)(c) by "seriously mischaracteriz[ing]" a campaign advertisement written by Caron[10] by stating that the advertisement claims that Caron will, as probate judge, "offer legal advice to Veterans, even though judges can't do that under Maine law, Title 4." The Committee asserts that Caron's advertisement is not an offer to provide legal services as probate judge, but is rather an offer to inform Veterans of their potential eligibility for benefits. The Justice found:

The statement in the advertisement authorized by Judge Nadeau asserting that Caron's advertisement improperly promises to offer legal advice to veteran that judges are not permitted to offer is a misrepresentation of fact concerning one of his opponents. The Court is not persuaded, however, that the statement by Judge Nadeau was made with actual knowledge of its inaccuracy, or in reckless disregard for its truth.

[¶ 25] The Justice, who had the opportunity to personally observe Judge Nadeau and assess his credibility, was not compelled to find that Judge Nadeau acted with actual knowledge when he misrepresented Caron's advertisement. Accordingly, we find that Judge Nadeau's actions in misrepresenting Caron's offer of aid to

---

10. Caron's advertisement states, in pertinent part:

It is sad that many of our veterans and their families are not aware of the rights and benefits they earned while defending this great country.

I pledge to use the office of the Judge of Probate to provide effective probate services and inform all York county residents of their potential benefits.

Veterans do not constitute a violation of Canon 5(B)(2)(c) of the Code of Judicial Conduct.

### III. CONCLUSION

[¶ 26] While Judge Nadeau made several serious misrepresentations of fact concerning his opponents, we find that he violated Canon 5(B)(2)(c) of the Code of Judicial Conduct only with respect to Count I of the Committee's report. We reserve judgment on the appropriate measure of discipline pending additional briefing from the parties. Accordingly, the parties are given ten days from the publication of this opinion, to submit briefs to the Court and five additional days for reply briefs, limited only to the issue of the appropriate sanction. The Court will then render a decision on discipline without further argument by the parties.

The entry is:

Judge Nadeau has violated Canon 5(B)(2)(c) of the Maine Code of Judicial Conduct.