MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 191
Docket:      Jud-16-1 and Jud-17-1
Motion:      June 30, 2017
Decided:     September 7, 2017

Panel:       SAUFLEY C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN THE MATTER OF ROBERT M.A. NADEAU

PER CURIAM

[¶1] Robert M.A. Nadeau has filed a motion for reconsideration of our June 20, 2017, decision in this judicial disciplinary matter, *In re Nadeau*, 2017 ME 121, --- A.3d ---. To allow consideration of his motion, we deferred the effective date of his two-year suspension from the practice of law from August 1, 2017, to September 15, 2017; invited a response to his motion from the Committee on Judicial Responsibility and Disability; and allowed Nadeau time to respond to any filing by the Committee.

[¶2] In his motion, supplemented by his response to the Committee's filing, Nadeau makes two arguments.

[¶3] First, he contends that the two-year suspension from the practice of law and $5,000 forfeiture that we ordered as sanctions for his numerous violations of the Code of Judicial Conduct violated his rights to equal protection and due process of law because, he argues, the sanctions were more severe than the sanctions recommended by the Committee—a $10,000 fine and a two-year

suspension from the practice of law, with the suspension from practice to take effect only if Nadeau again sought election as a probate judge.

[¶4] Second, Nadeau contends that the sanctions imposed on him may violate the Privileges and Immunities Clause because, Nadeau alleges, many clients desirous of his services will be deprived of his services if the two-year suspension from the practice of law remains in effect. Nadeau further asserts that "[t]here has been no finding that [he] has engaged in any harm to any private client in his 36 years as an attorney, and no evidence that he would ever commit such harm in the future."

## I. REVIEW OF ISSUES

### A. Due Process and Equal Protection

[¶5] Nadeau argues, in essence, that the two-year suspension from the practice of law violates his rights to equal protection and due process of law because (1) the Committee's recommendation of a conditional suspension failed to notify him that he faced an actual suspension; (2) by analogy to plea agreements in criminal cases, the Court is barred from imposing a more severe sanction than recommended by the Committee; and (3) the two-year suspension from practice and the $5,000 forfeiture are more severe sanctions than sanctions that have been imposed on other judges, similarly situated, after findings of violations of the Code of Judicial Conduct.

[¶6]  Nadeau's claim that he was not on notice about the possibility that his license to practice law would be suspended is undermined by our opinion in *In re Cox*, 658 A.2d 1056 (Me. 1995)—a case specifically addressed during the February oral argument.  Cox, like Nadeau, was no longer a judge when we heard his judicial discipline action.  *Id.* at 1057.  Cox, like Nadeau, argued that the action was moot because no sanctions could be imposed for violations of the Code of Judicial Conduct on a person who was no longer a judge.  *Id.*  As we pointed out to Nadeau at oral argument, we rejected Cox's mootness argument, and, noting that Cox had "returned to the private practice of law," *id.*, we ordered that Cox be disbarred from the practice of law as the sanction for his violations of the Code of Judicial Conduct, *id.* at 1058.  Our decision in *Cox* placed Nadeau on notice that his license to practice law could be suspended, and that exposure was made even more clear by the colloquy at oral argument.[1]

[¶7]  Further, despite his assertion that he was not provided with adequate notice, Nadeau does not suggest anything that he would have or could have done differently, or anything additional that he might have offered in the proceeding before us, had he been concerned that his capacity to practice law

---

[1]  In his motion for reconsideration, Nadeau alleged that he has been "consumed" by his attention to this matter "every minute of every day during the past two years."  If Nadeau was as intensely focused on this matter as he claims he was, we can certainly assume that, in his preparations to defend this matter, he would have become aware of our *Cox* opinion, which demonstrates that as a former judge he remained subject to sanctions for misconduct occurring during his judicial service.

could be suspended. In the arguments that he presented to the single justice (*Clifford, J.*) and to us, Nadeau asserted that he had not committed any violation of the Code of Judicial Conduct. He also asserted to us that, because he was defeated for reelection and his term as a probate judge had expired, this action was moot and no sanctions of any kind could be imposed.

[¶8] Nadeau's analogy to criminal proceedings, where a State's sentencing recommendation is sometimes a cap, is inapt because of the different nature of this proceeding.[2] It must also be noted that the Committee's sanction recommendation was made as part of its prosecution of its 2016 filing, Jud-16-1, before presentation of its additional report of improper personal solicitation of campaign contributions asserted in Jud-17-1 and addressed in our opinion. *See In re Nadeau*, 2017 ME 121, ¶¶ 53-56, --- A.3d ---.

[¶9] Nadeau's contention of disparate treatment is also unpersuasive. The separate filings here in Jud-16-1 and Jud-17-1 represent the fourth and fifth times that actions asserting professional misconduct by Nadeau, as an attorney or a judge, have come to this Court for decision. *See In re Nadeau*, 2016 ME 116,

---

[2] M.R.U. Crim. P. 11A(d) directs that, when a plea agreement with a recommended sentence is presented, "[t]he court shall not reject the recommendation without giving the defendant the opportunity to withdraw his plea." This requirement does not apply, however, to a sentencing recommendation made before, during, or after a contested trial—another reason why Nadeau's argument fails.

144 A.3d 1161; *In re Nadeau*, 2007 ME 21, 914 A.2d 714;[3] *Bd. of Overseers of the Bar v. Nadeau*, BAR-05-03 (Mar. 2, 2006) (Single Justice Order). Our professional regulatory structures for attorneys and judges became fully operational in or near their present form by 1980. Records of referrals to this Court of claims of professional misconduct by attorneys or judges since 1980 show that no individual has been subject to as many referrals for professional discipline as Robert M.A. Nadeau.

B.    Misconduct as an Attorney

[¶10] Nadeau next asserts that a sanction affecting his license to practice law is misplaced because the bases for the judicial discipline we have imposed did not expose his private clients to harm. This argument must be examined in light of Nadeau's disciplinary history.

[¶11] The 2006 bar disciplinary action against him, alleging professional misconduct as an attorney, involved three separate Grievance Commission complaints: one arising from a sexual relationship with a client; one arising from directly contacting his former law partners, who were represented by counsel, during the contentious breakup of their law firm; and one arising from Nadeau's unprofessional criticism of a judge for declining to bar public access

---

[3]  Sanctions in this matter were subsequently addressed by *In re Nadeau*, 2007 ME 35, 916 A.2d 200.

to the file of the action involving the breakup of his law firm. That action was resolved by agreement between Nadeau and the Board of Overseers of the Bar.

[¶12]  In the single justice decision in Nadeau's bar disciplinary matter, *Bd. of Overseers of the Bar v. Nadeau*, BAR-05-03 at 2 (Mar. 2, 2006), Nadeau agreed to the following facts: "On June 20, 2003, Attorney Nadeau commenced a consensual sexual relationship with a divorce client.  Attorney Nadeau's conduct when he terminated the attorney-client relationship and withdrew from representation of that client fell short of the standards established in the Code of Professional Responsibility."

[¶13]  The agreed to facts also indicate that the "divorce client" had complained to the Board, resulting in a Grievance Commission proceeding and a recommendation of discipline to the Court (GCF # 03-255).  *Id.*  However, before the Court proceeding, Nadeau and the former client "reunited in their romantic relationship," and the former client then denied that Nadeau "acted unprofessionally."  *Id.*  These circumstances resulted in an agreed to recommendation, accepted by the Court, of a dismissal with a warning to Nadeau to "refrain from such misconduct in the future."  *Id.* at 3.

[¶14] The agreed to resolution of the 2006 bar discipline proceeding also involved Nadeau (1) withdrawing his appeal of a Grievance Commission reprimand for Nadeau's directly contacting represented litigants (former

members of his law firm) during litigation over the breakup of his law firm (GCF # 03-335); and (2) agreeing to a public reprimand for his "discourteous and degrading" criticism of a Superior Court Justice who declined to seal the record of the litigation regarding the breakup of his law firm, thereby allowing public disclosure of his affair with his former client (GCF # 04-314). *Id.* at 3-5.

[¶15]  The 2006 proceeding concluded with the following order, entered with Nadeau's agreement:

> In accordance with Bar Counsel's recommendation, and with agreement of Attorney Nadeau, on the basis of the conduct set forth in GCF # 03-335 and GCF # 04-314 a **public reprimand** is imposed. All of these violations of the Maine Bar Rules are serious.  Attorney Nadeau is ORDERED to conduct himself in the future so as to avoid further occasions of professional misconduct.  By agreeing to this disposition, Attorney Nadeau acknowledges that he feels remorse for his actions.  The Court cautions him to utilize that remorse to inform his judgment, and to choose his best judgment over his inclination to impulsivity in the future.

*Id.* at 5.

[¶16]  Following the dismissal with a warning of the grievance complaint involving the former client, the "romantic relationship" ended.  This was followed by acrimonious litigation between Nadeau and his former client, which we reviewed in *Nadeau v. Frydrych*, 2014 ME 154, 108 A.3d 1254.  That litigation also led to a judicial disciplinary action against Nadeau for sending a threatening letter to his former client's attorney, which, we determined,

8

"exploited his judicial office for personal gain because he gratuitously invoked his position of judicial and public prominence to advance his personal objective of settling the protection case on his terms." *In re Nadeau*, 2016 ME 116, ¶ 17, 144 A.3d 1161.

[¶17] Concluding that "Judge Nadeau's statements diminished the integrity of the judiciary, and invoked the power and prestige of his office without justification and for his own purposes," we concluded that Nadeau had violated Canons 1 and 2(B) of the 1993 Maine Code of Judicial Conduct. *Id.* ¶ 19. For this violation of the 1993 Code, we imposed a public censure and reprimand and a thirty-day suspension from his office of probate judge. *Id.* ¶ 50.[4]

[¶18] The first three of the violations at issue in this proceeding involve vindictive and impulsive actions that Nadeau took in 2012 and 2013 regarding his former law partners—the same attorneys at issue in Nadeau's 2006 professional misconduct findings—and attorneys associated with his former law partners. These actions, now the subject of a judicial misconduct action, demonstrate Nadeau's disregard for his 2006 attorney misconduct agreement and court order "to avoid further occasions of professional misconduct," "to utilize that remorse [for his actions regarding his former partners] to inform

---

[4] In the 2016 opinion, we determined that three other claims of judicial misconduct had not been proved to have violated the 1993 Code of Judicial Conduct. *See In re Nadeau*, 2016 ME 116, ¶¶ 25-43, 144 A.3d 1161.

his judgment," and "to choose his best judgment over his inclination to impulsivity." *Bd. of Overseers of the Bar v. Nadeau*, BAR-05-03 at 5 (Mar. 2, 2006).

## II. CONCLUSION

[¶19]  The sanctions we impose here rest on our consideration of all of Nadeau's history of professional misconduct, as both an attorney and a judge. As we stated in the opinion that is the subject of this motion,

> This is now the fourth time that Judge Nadeau has appeared before us for ethical violations, and the third time for conduct that occurred while serving in a judicial capacity.  [Citing the 2016, 2007, and 2006 opinions referenced above.]  Here, his actions were often carried out in an intemperate and vindictive fashion against former colleagues of his law practice and their associates. Attorneys' reputations were harmed, and litigants before him were pressured to support his efforts to increase court resources and his compensation.  Judge Nadeau has not fully acknowledged the intemperate nature of his decisions.
>
> We have already acknowledged that "prior corrective efforts have not been effective in dissuading [Judge Nadeau] from engaging in intemperate conduct prohibited by the Canons." *In re Nadeau*, 2016 ME 116, ¶ 49, 144 A.3d 1161.  This time, therefore, more severe sanctions are warranted.

*In re Nadeau*, 2017 ME 121, ¶¶ 62-63, --- A.3d ---.

[¶20]  With this history, Nadeau was certainly on notice regarding the sanctions he could face; he has not been denied due process in this proceeding; and he has failed to demonstrate that he has been sanctioned more harshly than

others similarly situated, having identified no Maine attorney with a history of professional misconduct violations as extensive as his own. Nadeau's motion for reconsideration is therefore denied. To accommodate the notices that must be provided by Nadeau, *see* M. Bar R. 31, and by the Board of Overseers of the Bar, *see* M. Bar R. 19, the effective date of Nadeau's two-year suspension is adjusted as indicated in the entry below.

The entry is:

> After review of the record on Robert M.A. Nadeau's motion for reconsideration, including the documents filed by Robert M.A. Nadeau and the Committee on Judicial Responsibility and Disability, the Court ORDERS as follows:
>
> The motion for reconsideration is DENIED. The two-year suspension from the practice of law ordered in our opinion in *In re Nadeau*, 2017 ME 121, --- A.3d ---, shall commence on October 1, 2017. The sanctions as otherwise ordered in *In re Nadeau*, 2017 ME 121, --- A.3d ---, shall remain in effect and unchanged.

---

Cabanne Howard, Esq., Committee on Judicial Responsibility and Disability, Portland, for the Committee on Judicial Responsibility and Disability

Robert M.A. Nadeau, pro se